UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORRIS L. REESE,<br><br>    Petitioner,<br><br>    v.<br><br>RON BROOMFIELD,<br><br>    Respondent. | Case No. 2:21-cv-04342-SVW-JC<br><br>ORDER TO SHOW CAUSE WHY THE PETITION FOR WRIT OF HABEAS CORPUS AND THIS ACTION SHOULD NOT BE DISMISSED |

## I. SUMMARY

On May 24, 2021, petitioner Norris L. Reese (sometimes spelled "Reece"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") with attachments ("Petition Ex."), which appears to challenge his 98-years-to-life sentence imposed in 1982 in Los Angeles County Superior Court Case No. A363127, for two counts of first degree murder, one count of involuntary manslaughter, three (or four) robbery counts and one burglary count. See Petition at 2, 5-6 (stating that the Petition concerns a "[d]isproportionate [t]erm of [i]ncarceration for a 16 year old child"). The Petition purports to raise two claims for relief: (1) petitioner's sentence to 98-years-to-life is disproportionate to his individual culpability from having committed the crimes when petitioner was 16 years old, his sentence amounts to cruel and unusual punishment, and his lengthy sentence (which he asserts is a *de facto*

sentence for life without the possibility of parole or death) violates Miller v. Alabama, 567 U.S. 460 (2012), Montgomery v. Louisiana, 577 U.S. 190 (2016), and Graham v. Florida, 560 U.S. 48 (2010), and should qualify him for a reduction in his sentence by hearing pursuant to People v. Franklin, 63 Cal. 4th 261 (Cal.), cert. denied, 137 S. Ct. 573 (2016) (Ground One; see Petition at 5-15); and (2) his continued incarceration after 40 years is grossly disproportionate to his diminished culpability from committing his crimes when he was 16 years old (Ground Two; see Petition at 15-26). With respect to Ground Two, petitioner states, "Petitioner does not challenge by this writ of habeas corpus his lawful indeterminate sentence. On the contrary, Petitioner challenges the actual term of years he was required to serve . . . [as determined by the California Board of Parole Hearing's April 28, 2016 decision to deny parole]." (Petition at 18). Petitioner also argues that the Board of Parole Hearings denied him parole for seven years without taking into consideration petitioner's "diminis[hed] culpability as a 16 year old child under the influence of PCP at the time of the crime[s]." (Petition at 6).

Petitioner has attached to the Petition: (1) an April 28, 2016 hearing transcript and decision by the California Board of Parole Hearings denying parole for seven years (Exhibit A); (2) a Comprehensive Risk Assessment for the Board of Parole Hearings dated March 25, 2015 (Exhibit B); (3) an October 9, 2019 Los Angeles County Superior Court decision in Case No. BH012569 denying a petition for writ of habeas corpus, finding that "some evidence" supported the Board of Parole Hearings's April 28, 2016 denial ("LASC Order"); (4) a December 5, 2019 California Court of Appeal order in Case No. B302167 denying a petition for writ of habeas corpus for failure to state a prima facie case for relief, citing People v. Duvall, 9 Cal. 4th 464, 474-75 (1995) and People v. Dillon, 34 Cal. 3d 441, 479, 482-83, 487-88 (1983); and (5) a March 17, 2021 California Supreme Court order in Case No. S266945 denying a petition for writ of habeas corpus without comment.

///
///

## II. DISCUSSION

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court. . . ." Rule 4 of the Rules Governing Section 2254 Cases. Based upon the Petition and its attachments, and for the reasons discussed below, the Court orders petitioner to show cause why the Petition and this action should not be dismissed for untimeliness and/or for failure to state a claim meriting federal habeas relief.

### A. To the Extent Petitioner May Be Challenging His Original 98-Years-to-Life Sentence as Disproportionate or Amounting to Cruel and Unusual Punishment, the Petition Appears to Be Time-Barred and without Merit

Although petitioner states in Ground Two that he is not challenging his original "lawful" indeterminate sentence (Petition at 18), Ground One can be read to raise such a challenge. Any such challenge appears to be untimely.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs all petitions for writs of habeas corpus filed in federal court after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997). AEDPA instituted a one-year statute of limitations for the filing of habeas petitions by persons in state custody. 28 U.S.C. § 2244(d)(1). The one-year limitation period runs from the latest of: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review (28 U.S.C. § 2244(d)(1)(A)); (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action (28 U.S.C. § 2244(d)(1)(B)); (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases

on collateral review (28 U.S.C. § 2244(d)(1)(C)); or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence (28 U.S.C. § 2244(d)(1)(D)).

For prisoners like petitioner whose convictions became final prior to AEDPA's effective date, April 24, 1996, a one-year grace period applies. Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir.), cert. denied, 534 U.S. 978 (2001). Accordingly, the statute of limitations commenced to run on April 25, 1996, unless subsections B, C or D of 28 U.S.C. § 2244(d)(1) apply.

Subsection B of 28 U.S.C. § 2244(d)(1) has no application in the present case. Petitioner does not allege, and this Court finds no indication, that any illegal state action prevented petitioner from filing the present Petition sooner.

Subsection C of 28 U.S.C. § 2244(d)(1) also appears to have no application in the present case. While petitioner purports to rely in part on California case law (see Petition at 6 (citing California Supreme Court cases)), these state cases do not afford a predicate for a later accrual date. See 28 U.S.C. § 2244(d)(1)(C) (only rights recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review qualify). Petitioner also cites to Graham v. Florida, 560 U.S. 48, 82 (2010) (holding that the Eighth Amendment prohibits a sentence of life without parole for juvenile offenders who did not commit homicide); Miller v. Alabama, 567 U.S. 460, 465 (2012) (holding that statutory scheme providing for mandatory (versus discretionary) life sentence without parole for those under age 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments); and Montgomery v. Louisiana, 577 U.S. 190, 212 (2016) (holding that Miller announced a substantive rule of constitutional law and has a retroactive effect; observing that a "State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them"). While Miller has been made retroactively applicable, the foregoing United States Supreme Court cases do not apply to the instant case. Petitioner was not sentenced to life without parole – he was sentenced to an

indeterminate term and became eligible for parole upon a change in California law post-Miller (see Cal. Penal Code § 3051(b)(3) (eff. Jan. 1, 2014)), and since has been found unsuitable for parole for a period of seven years (see Petition at 2, 18, 22; Exhibit A at 4, 134, 197-218 (parole hearing decision)), so his sentence does not run afoul of these authorities. Even if petitioner were afforded a later accrual date for his Eighth Amendment sentencing claim to January 27, 2016 – the date of the decision in Montgomary v. Louisiana confirming that Miller applies retroactively – the Petition would still be untimely as to this claim. Assuming, *arguendo*, that the statute of limitations began to run on petitioner's sentencing claim on January 28, 2016, it would have expired on January 27, 2017 absent statutory tolling.

Subsection D of 28 U.S.C. § 2244(d)(1) also does not afford petitioner a later accrual date for the statute of limitations. Under Section 2244(d)(1)(D), the statute of limitations commences when a petitioner knows, or through the exercise of due diligence could discover, the factual predicate of his claims, not when a petitioner learns the legal significance of those facts. See Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001); see also Redd v. McGrath, 343 F.3d 1077, 1084 (9th Cir. 2003). Here, petitioner's sentencing claim arises from facts which petitioner knew or should have known at the time he was sentenced in 1982 (*i.e.*, he was 16 at the time of his offenses and he was sentenced to 98-years-to-life in prison).

Title 28 U.S.C. § 2244(d)(2) provides that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year statute of limitations period. Petitioner "bears the burden of proving that the statute of limitations was tolled." Banjo v. Ayers, 614 F.3d 964, 967 (9th Cir. 2010), cert. denied, 564 U.S. 1019 (2011). The statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case pending during that interval. Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010) (citations omitted). Here, the record does not reflect that petitioner is entitled any statutory tolling. It

5

does not appear that petitioner filed any state applications during the limitations period. The Petition reflects that petitioner's direct appeal to the California Supreme Court was denied in 1984, and petitioner had not filed any prior habeas petitions with the state courts with respect to his conviction. (Petition at 3). Petitioner did file habeas petitions with the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court, but the first of those petitions was not filed until July 15, 2019 – well after the limitations period had run. See LASC Order at 1.

In addition to statutory tolling, the limitations period may also be subject to equitable tolling if petitioner can demonstrate both that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way. Holland v. Florida, 560 U.S. 631, 649 (2010). It is a petitioner's burden to demonstrate that he is entitled to equitable tolling. Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir.), cert. denied, 537 U.S. 1003 (2002). It does not appear from the Petition or the current record that petitioner has met his burden to demonstrate that he is entitled to tolling sufficient to render the Petition timely as to any sentencing claim.

In rare and extraordinary cases, a plea of actual innocence can serve as a gateway through which a petitioner may pass to overcome the statute of limitations otherwise applicable to federal habeas petitions. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013); see also Lee v. Lampert, 653 F.3d 929, 934-37 (9th Cir. 2011) (en banc). "[A] petitioner does not meet the threshold requirement unless he [or she] persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him [or her] guilty beyond a reasonable doubt." Perkins, 569 U.S. at 386 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Petitioner has not raised an actual innocence claim and in fact has admitted to his underlying offenses. See Exhibit A (transcript of parole hearing discussing same).

///

For the foregoing reasons, it appears that any claim that petitioner may be attempting to raise regarding the constitutionality of his sentence imposed in 1982 is time-barred.

Even if petitioner's sentencing claim were not time-barred, it still would not merit federal habeas relief. Petitioner contends that his 98-years-to-life sentence violates the Eighth Amendment because his sentence is *de facto* a sentence of life without the possibility of parole or death, and argues that the term of 40 years he already has served is disproportionate to his crimes. (Petition at 7, 9-10, 12, 15-26). Neither of these arguments has merit.

In Demirdjian v. Gipson, 832 F.3d 1060 (9th Cir. 2016), cert. denied, 138 S. Ct. 71 (2017), the Ninth Circuit rejected a juvenile offender's argument that two consecutive terms of 25 years to life violated the Eighth Amendment because the sentence was the "functional equivalent" of life without the possibility of parole. Id. at 1076-77. The Ninth Circuit observed:

> Miller's prohibition of mandatory life-without-parole sentences for juvenile offenders rested in part on the premise that "a distinctive set of legal rules" applies to a life-without-parole term for juveniles. Because such a term is the "ultimate penalty for juveniles . . . akin to the death penalty," it "demand[s] individualized sentencing," including consideration of the juvenile's age and the circumstances of the crime. Miller noted, however, that "no other sentences" "share [these] characteristics with death sentences." There is a reasonable argument that Miller thus applies only to life-without-parole sentences.

Demirdjian, 832 F.3d at 1076 (citations omitted). The Ninth Circuit then rejected Demirdjian's argument that his 50-years-to-life sentence was the "functional equivalent" of a life-without-parole sentence, stating that in Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court "held an identical sentence was not controlled by federal precedent involving a life-without-parole sentence." Demirdjian, 832 F.3d at 1076-77. Rather, in Andrade, the Supreme Court "reasoned

7

a sentence of two consecutive terms of 25 years to life was 'materially []distinguishable' from a life-without-parole term because the petitioner actually 'retain[ed] the possibility of parole,' albeit when he was 87 years old." Id., at 1077 (citing Andrade, 538 U.S. at 73-74). Applying this reasoning, the Ninth Circuit found that "because Demirdjian will be eligible for parole when he is 66 years old, his sentence arguably does not 'share [any] characteristics with death sentences,' and thus does not necessarily trigger Miller's requirements." Id. (citation omitted). Therefore, the Ninth Circuit held Demirdjian was "not entitled to habeas relief on his Eighth Amendment claim" since "fairminded jurists could disagree with Demirdjian that Miller's requirements applied to his sentence[.]" Id.; see also Harrington v. Richter, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (citation omitted)).

As noted above, petitioner has been eligible for juvenile offender parole consideration and thus far has had one parole hearing resulting in a denial. (Petition at 2, 18, 22; Exhibit A at 4, 134, 197-218). Demirdjian therefore precludes relief on petitioner's Eighth Amendment claim since fairminded jurists could disagree with petitioner that Miller's requirements apply to his sentence. Richter, 562 U.S. at 101; Demirdjian, 832 F.3d at 1077. Even if this were not the case, petitioner still would not be entitled to relief. The Supreme Court has recognized that a "State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." Montgomery v. Louisiana, 577 U.S. at 212 (citing as an example Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years)). California has done so in that California law provides for parole consideration for youthful offenders after 25 years. See Cal. Penal Code § 3051(b)(3) ("A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th

year of incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 25th year of incarceration."). Section 3051 "effectively moots" a Miller claim by converting a juvenile's life-without-parole "sentence into one for life with the possibility of parole after 25 years." Bunn v. Lopez, 740 Fed. App'x 145, 147 (9th Cir. 2018); Franklin, 63 Cal. 4th at 278-80.

Petitioner's disproportionality claim based on his service of 40 years of his 98-years-to-life sentence fares no better. "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring)); see also Andrade, 538 U.S. at 72 (noting that under "clearly established" Eighth Amendment jurisprudence, "[a] gross disproportionality principle is applicable to sentences for terms of years"). However, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Andrade, 538 U.S. at 77; see also Rummel v. Estelle, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").

Here, petitioner has not shown that his indeterminate 98-years-to-life sentence for two first degree murders, one involuntary manslaughter, three robberies and a burglary is grossly disproportionate, or that his ongoing detention after so many years of incarceration is an "extraordinary case" of cruel and unusual punishment. Andrade, 538 U.S. at 76; Ewing, 538 U.S. at 30-31. Similarly lengthy sentences for crimes less serious than petitioner's crimes have been upheld by the Supreme Court. See, e.g., Ewing, 538 U.S. at 29-31 (upholding 25-years-to-life sentence for recidivist convicted most recently of grand theft); Andrade, 538 U.S. at 76 (upholding sentence of two consecutive 25-years-to-life terms for recidivist convicted most recently of two counts of petty theft with a prior conviction); Harmelin, 501 U.S. at 996 (upholding sentence of life without the possibility of

parole for first offense of possession of 672 grams of cocaine); compare Miller, 567 U.S. at 473 ("the characteristics of youth. . . can render a life-without-parole sentence disproportionate"). Petitioner has shown no Eighth Amendment violation. Petitioner and a co-defendant robbed and killed four people while under the influence of PCP, targeting older victims in the Pico-Robertson area of Los Angeles. (LASC Order at 1). All of the victims were vulnerable, unarmed, unsuspecting, some were elderly, they posed no threat to petitioner, and in some instances put their hands up in surrender when told they were being robbed and petitioner still shot and killed them. (Exhibit A at 83-103, 126-38, 185-86. 199-200).[1]

For these reasons, petitioner's Eighth Amendment claim lacks merit and does not warrant relief. Assuming petitioner presented such a claim in his petitions to the state courts, any rejection by those courts would not be contrary to, or involve an unreasonable application of, clearly established federal law or be based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

## B. Petitioner's Challenge to the Board of Parole Hearing's Denial of Parole Is without Merit

In Ground Two, petitioner challenges his denial of parole, asserting in part that the Board of Parole Hearings did not take into account his youth at the time of his offenses in denying parole and that the denial of parole after serving 40 years

///

---

[1]After discussing his crimes at the parole hearing, petitioner volunteered:

I should be on death row. I shouldn't even be here, today. . . . I didn't do no parole plans [sic], I didn't do no relapse prevention plan [sic]. And I did it both times when I came in here. And the reason why I did that because I wanted you guys to see that I came in here really to express a deep regret and sorrow for what I did. I should never get on this – I should never be on the street, period. I shouldn't – I shouldn't even be living.

(Exhibit A. at 124-25). Petitioner's counsel at the hearing also noted that petitioner did not expect to get a parole release date from the hearing. (Exhibit A at 191-92).

amounts to a disproportionate term of incarceration for his crimes committed while he was a "child." (Petition at 6, 18).

As explained above, petitioner has not shown that his sentence is disproportionate to his crimes. Petitioner's claim that his parole denial after 40 years of incarceration has rendered his sentence disproportionate to his crimes does not merit relief under the Eighth Amendment. See Baumann v. Ariz. Dep't of Corr., 754 F.2d 841, 846 (9th Cir. 1985) (prisoner's disappointment from the failure to allow his release from prison is not cruel and unusual punishment; noting such "disappointment does not offend the standards of decency in modern society").

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). In some instances, however, state statutes may create liberty interests in parole release entitled to protection under the federal Due Process Clause. See Board of Pardons v. Allen, 482 U.S. 369, 371 (1987); Greenholtz, 442 U.S. at 12. The Ninth Circuit has held that California's statutory provisions governing parole create such a liberty interest. See Roberts v. Hartley, 640 F.3d 1042, 1045 (9th Cir. 2011); Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc), overruled on other grounds by Swarthout v. Cooke, 562 U.S. 216 (2011).[2]

"In the context of parole, . . . the procedures required are minimal." Swarthout, 562 U.S. at 220. Due Process requires that the State furnish a parole applicant with an opportunity to be heard and a statement of reasons for a denial of parole. Greenholtz, 442 U.S. at 16; see also Swarthout, 562 U.S. at 220. "The Constitution does not require more." Greenholtz, 442 U.S. at 16; accord Swarthout v. Cooke, 562 U.S. at 220 (citation omitted); see also Roberts, 640 F.3d at 1046

---

[2] In Swarthout, the Supreme Court did not reach the question of whether California law creates a liberty interest in parole, but observed that the Ninth Circuit's affirmative answer to this question "is a reasonable application of our cases." Swarthout, 562 U.S. at 219-20 (citations omitted). The Ninth Circuit held that Swarthout "did not disturb our conclusion that California law creates a liberty interest in parole." Roberts, 640 F.3d at 1045 (citation omitted).

("there is no substantive due process right created by the California parole scheme"). In the parole context, then, "[d]ue process is satisfied as long as the state provides an inmate seeking parole with 'an opportunity to be heard and . . . a statement of the reasons why parole was denied.'" Roberts, 640 F.3d at 1046 (quoting Swarthout, 562 U.S. at 220).

Petitioner does not contend, and the record does not show, that petitioner was denied the requisite procedural safeguards. Petitioner had a lengthy hearing during which petitioner and his counsel had ample opportunity to be heard, and the Board issued a written statement of its reasons for denying petitioner parole. See Exhibit A filed with the Petition. Petitioner plainly received all process that was due during his 2016 parole hearing.

The record also clearly belies any argument that the Board of Parole Hearings did not consider that petitioner was a youthful offender in deeming him not suitable for parole. The Board cited petitioner's youth at the time of the offense in weighing whether he was suitable for parole and found that he was not suitable. See Exhibit A at 3 (Board noting at the outset of the hearing, "[Petitioner] is a juvenile offender, so great weight will be given to those youthful offender factors that are identified in Penal Code 3051."); Exhibit A at 118 (Commissioner noting to petitioner's counsel, "I'm just trying to understand his youthful thinking"); Exhibit A at 151 (Commissioner stating, "I understand the youthful characteristics. I understand impulsitivity. I understand your not appreciating the consequences of your actions. I understand a lot of that. . ."); Exhibit A at 183 (Commissioner noting that the psychological assessment "did factor in the youthful offender characteristics. The doctor looked at the fact that you were 16 years old, you were a youthful offender, and spends a few paragraphs of the report on that factor."); Exhibit A at 197-98 (Board stating in the decision, "The Panel notes that Mr. Reece qualifies as a youth offender under the provisions of Senate Bill 260, and so the Panel was required and actually did give great weight to the youthful offender factors in concluding the diminished culpability of youth compared to adults, the hallmark features of youth

as well as the subsequent growth and maturity that the inmate has attained since his incarceration. . . . And after weighing all of the relevant and reliable information we have concluded that Mr. Reece currently poses an unreasonable risk to the public and a threat to public safety. And he is therefore not suitable for parole."); Exhibit A at 210 (Board decision stating that the psychologist factored in the youthful offender characteristics and found petitioner still posed a moderate risk for violent re-offense); see also Exhibit B at 11-12 (psychological assessment considering petitioner's youth and finding he posed a moderate risk).

For the foregoing reasons, based on the current record and arguments it appears that petitioner is not entitled to federal habeas relief on any claim challenging the decision to deny him parole.

### III. CONCLUSION AND ORDER

For the reasons discussed above, it appears that the Petition is untimely, without merit, and that petitioner is not entitled to habeas relief on his claims. Petitioner is therefore ORDERED TO SHOW CAUSE by not later than **June 25, 2021**, why this action should not be dismissed for untimeliness and/or failing to raise a claim meriting federal habeas relief. Petitioner is advised that he has the right to submit declarations, affidavits, or any other evidentiary materials relative to the timeliness issue with his response to this Order to Show Cause. All affidavits and declarations must be signed under penalty of perjury by persons having personal knowledge of the facts stated in the affidavits or declarations.

Instead of filing a response to the instant Order to Show Cause, petitioner may request a voluntary dismissal of this action pursuant to Federal Rule of Civil Procedure 41(a). If he elects to proceed in that manner, he may sign and return the attached Notice of Dismissal. However, petitioner is advised that any dismissed claims may later be subject to dismissal with prejudice as time-barred under 28 U.S.C. § 2244(d)(1).

**Petitioner is cautioned that the failure timely to respond to this Order to Show Cause and/or to show good cause may result in the dismissal of this**

**action based upon petitioner's claims being time-barred and/or without merit, petitioner's failure to comply with the Court's order, and/or petitioner's failure to prosecute.**

IT IS SO ORDERED.[3]

DATED: June 4, 2021

                                        /s/
                               Honorable Jacqueline Chooljian
                               UNITED STATES MAGISTRATE JUDGE

---

[3] The Court's determinations and order herein constitute non-dispositive rulings on pretrial matters. To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days. See Local Rule 72-2.1. To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.